**CASE NUMBER: TBD**

November 9ᵀᴴ, 2018

RECEIVED

18 NOV -9 PM 3: 09

CITY OF SEATTLE
MAYOR'S OFFICE

KING COUNTY DISTRICT COURT OF WASHINGTON
AT SEATTLE – WEST DIVISION
516 3rd Ave
Seattle, WA 98104

FILED

NOV 09 2018

KCDC - West Division
Seattle Courthouse

| | |
|---|---|
| ISABELLE KERNER, | CASE NO. TBD |
| | 18CIV15225KCX |
| Plaintiff, | |
| v. | |
| SEATTLE POLICE DEPARTMENT, | COMPLAINT |
| Defendant. | |

Complaint - 1

Isabelle Kerner

CASE NUMBER: TBD                                                November 9TH, 2018

## TABLE OF CONTENTS

I.   **INTRODUCTION** ............................................................................................ 5
    1.   OBLIGATION TO PERFORM UNBIASED POLICING ............................................. 5
    2.   HISTORY OF BIAS POLICING ....................................................................... 5
    3.   OBLIGATION TO APPLY LAWS EQUALLY......................................................... 5
    4.   RIGHT TO FREE SPEECH ............................................................................. 5
    5.   COMMON SENSE AND POLICE DISCRETION .................................................. 6
    6.   CONFLICTS IN THE CLASSIFICATION OF "BIAS CRIMES" ................................. 6
    7.   BRIEF SUMMARY OF EVENTS ..................................................................... 7

II.   **JURISDICTION AND VENUE** ................................................................... 9
    1.   KING COUNTY DISTRICT COURT ................................................................. 9

III.   **PARTIES**.................................................................................................. 10
    1.   ISABELLE KERNER .................................................................................... 10
    2.   SEATTLE POLICE DEPARTMENT .................................................................. 10

IV.   **FACTUAL ALLEGATIONS**...................................................................... 10
    1.   TITLE 5, SECTION 1, ARTICLES 2, 10, 11, 13, AND 14 OF THE SPD POLICES MANUAL
        ........................................................................................................... 10
    2.   THE INCIDENT – 17-374035 .................................................................. 10
    3.   RCW 9A.36.080 .................................................................................... 12
    4.   DEFENDANTS ABUSE DISCRETION.............................................................. 13
    5.   DEFENDANTS APPROACH SCENE OF INCIDENT AND ENCOUNTER PLAINTIFF ........... 15
    6.   DEFENDANTS INTENTIONALLY FALSIFY INFORMATION..................................... 15
    7.   DEFENDANTS BLAME PLAINTIFF FOR ASSAULT ............................................. 16
    8.   TITLE 15, SECTION 120-POL IN VIEW OF RCW 9A.36.080 AND SMC 12A.06.115
        ........................................................................................................... 16
    9.   DEFENDANTS VIOLATE RCW 9A.80.010 – OFFICIAL MISCONDUCT ...................... 18
    10.   DEFENDANTS VIOLATE RCW 42.20.100 – FAILURE OF DUTY .................................. 19
    11.   PLAINTIFF FILES COMPLAINT WITH OFFICE OF PROFESSIONAL ACCOUNTABILITY
        (OPA) ................................................................................................... 20
    12.   DEFENDANT(S) INTIMIDATE OPA INVESTIGATION WITNESSES VIOLATING ............. 20
    13.   PHYSICAL AND MENTAL IMPLICATIONS OF DEFENDANTS RESPONSE TO INCIDENT .20

V.   **FIRST CAUSE OF ACTION**....................................................................... 22
    1.   OFFICIAL MISCONDUCT RCW 9A.80.010 ........................................................ 22

VI.   **SECOND CAUSE OF ACTION**.................................................................. 23
    1.   FALSE REPORT RCW 42.20.040................................................................ 23

VII.   **THIRD CAUSE OF ACTION** ..................................................................... 25
    1.   FAILURE OF DUTY RCW 42.20.100 IN VIEW OF RCW 9A.36.080 MALICIOUS
        HARASSMENT........................................................................................... 25

VIII.   **FOURTH CAUSE OF ACTION**.................................................................. 27
    1.   FAILURE OF DUTY RCW 42.20.100 IN VIEW OF RCW 9A.36.011 AND RCW
        10.31.100 .............................................................................................. 27

IX.   **FIFTH CAUSE OF ACTION**....................................................................... 30
    1.   VIOLATION OF THE FIFTH AMENDMENT ....................................................... 30

X.   **SIXTH CAUSE OF ACTION** ...................................................................... 30
    1.   VIOLATION OF THE FOURTEENTH AMENDMENT ............................................ 31

| | | |
|---|---|---|
| XI. | | **DAMAGES AND RELIEF REQUESTED**.................................................................**31** |
| | 1. | COMPENSATORY DAMAGES:.......................................................................................31 |
| | 2. | PUNITIVE DAMAGE ....................................................................................................31 |
| | 3. | REMOVAL OF FALSIFIED INFORMATION ON SPD DATABASE ..........................31 |
| XII. | | **EXHIBITS**...............................................................................................................**32** |
| | 1. | EXHIBIT A - 2017OPA-1080 CASE CLOSE SUMMARY.....................................32 |
| | 2. | EXHIBIT B - POLICE REPORT - 17-374035_REDACTED................................32 |
| | 3. | EXHIBIT C - SOHAIB 911 CALL - AUDIO_1779785 ......................................32 |
| | 4. | EXHIBIT D - ISABELLE 911 CALL - AUDIO_1779786 ...................................32 |
| | 5. | EXHIBIT E - SUSPECT VIDEO -AXON_BODY_2_VIDEO_2017-10-08_0054 ...........32 |
| | 6. | EXHIBIT F - SUSPECT TO OFFICER - 7715_4020171008010502 ...........................32 |
| | 7. | EXHIBIT G - OFFICER TO ATTACKERS - CHARGING BIAS CRIME - 6793_4020171008011642 ...........................................................................32 |
| | 8. | EXHIBIT H - SCISSOR LIFT - IMG_2626 ......................................................32 |
| | 9. | EXHIBIT I- SCISSOR LIFT VIDEO TIME STAMP - IMG_2627 ............................32 |
| | 10. | EXHIBIT J - VIDEO AMBULANCE SCENE - AXON_BODY_2_VIDEO_2017-10-08_0128_REDASCTED ...........................................................................32 |
| | 11. | EXHIBIT K - VIDEO AMBULANCE -8395%4020171008005933_REDACTED......32 |
| | 12. | EXHIBIT L - BYSTANDER TESTIMONY TO OFFICER - 8395%4020171008005934_REDACTED.....................................................32 |
| | 13. | EXHIBIT M - AMBULANCE SCENE - AXON_BODY_2_VIDEO_2017-10-08_0128-2_REDACTED ...........................................................................32 |
| | 14. | EXHIBIT N - INCORRECT CASE NUMBER........................................................32 |
| | 15. | EXHIBIT O - CALL FROM OFFICER TO PARAMEDICS - AUDIO_1779788.....................32 |
| | 16. | EXHIBIT P - ERIN TO SRGT - INDEPENDENT WITNESS 6269_4020171100814643 ...........................................................................33 |
| | 17. | EXHIBIT Q - SUSPECT INJURY - SCREEN SHOT 2017-11-14 AT 11.50.58 PM .......33 |
| | 18. | EXHIBIT R - 2017OPA-1080 AUDITOR CERTIFICATION MEMO AS UNTIMELY ......33 |
| | 19. | EXHIBIT S - 2017OPA-1080 CIVILIAN (DND_) - SGT ANTHONY BENNETT_REDACTED ...........................................................................33 |
| | 20. | EXHIBIT T - 2017OPA-1080 CIVILIAN (DND_) - SGT ANTHONY BENNETT_REDACTED ...........................................................................33 |
| | 21. | EXHIBIT U - 2017OPA-1080 CIVILIAN (DND) - SGT ANTHONY BENNETT_REDACTED ...........................................................................33 |
| | 22. | EXHIBIT V - 2017OPA-1080 OPA CLASSIFICATION REPORT....................................33 |
| | 23. | EXHIBIT W - 2017OPA-1080 INVESTIGATION PLAN & CASE SUMMARY_REDACTED ...........................................................................33 |
| | 24. | EXHIBIT X - FRANCISCO HAYWARD BACKGROUND PROFILE.............................33 |
| | 25. | EXHIBIT Y - 2017OPA-1080 INTAKE FOLLOW-UP_REDACTED .......................33 |
| | 26. | EXHIBIT Z - 2017OPA-1080 PAS ENTRY – RAGUSO.....................................33 |
| | 27. | EXHIBIT Z0 - 2017OPA-1080 CASE COMPLETION MEMO .............................33 |
| | 28. | EXHIBIT Z1 - 2017OPA-1080, LEWIS SIGNED RECEIPT, WRITTEN REPRIMAND...33 |
| | 29. | EXHIBIT Z2 - 2017OPA-1080 COMPLAINANT VM 06-11-18...........................33 |
| | 30. | EXHIBIT Z3 - 2017OPA-1080 AMR DOCUMENTS PROVIDED BY COMPLAINANT...33 |
| | 31. | EXHIBIT Z4 - 2017OPA-1080 AUDIO_1790674 911 CALL #1 .....................33 |
| | 32. | EXHIBIT Z5 - 2017OPA-1080 AUDIO_1790675 911 CALL #2 .....................33 |
| | 33. | EXHIBIT Z6 - 2017OPA-1080 AUDIO_1790676 911 CALL #3 .....................33 |
| | 34. | EXHIBIT Z7 - 2017OPA-1080 AUDIO_1790677 911 CALL #4 .....................33 |
| | 35. | EXHIBIT Z8 - 2017OPA-1080 COMPLAINANT VM (1-16-2018) .....................33 |

CASE NUMBER: TBD                                              November 9TH, 2018

36.   EXHIBIT Z9 - 2017OPA-1080 COMPLAINANT VM (2-23-2018) ............................33

37.   EXHIBIT Z10 - 2017OPA-1080 DCM FINAL ..................................................33

38.   EXHIBIT Z11 - 2017OPA-1080 DISCIPLINE MEETING ................................................33

39.   EXHIBIT Z12 - 2017OPA-1080 INTERVIEW AVAILABILITY REQUEST - LEWIS 020218........................................................................................................34

40.   EXHIBIT Z13 - 2017OPA-1080 INTERVIEW AVAILABILITY REQUEST - RAGUSO 020218........................................................................................................34

41.   EXHIBIT Z14 - 2017OPA-1080 MEDICAL RELEASE FORM OPA ISABELLE KERNER ........................................................................................................34

42.   EXHIBIT Z15 - 2017OPA-1080 OPA CLASSIFICATION NOTIFICATION EMAIL .......34

43.   EXHIBIT Z16 - 2017OPA-1080 ORIGINAL COMPLAINT SUMMARY ...........................34

44.   EXHIBIT Z17 - 2017OPA-1080 SWORN EMPLOYEE IN-PERSON INTERVIEW NOTIFICATION - RAGUSO 020618........................................................................34

45.   EXHIBIT Z18- 2017OPA-1080 SWORN WITNESS EMPLOYEE IN-PERSON INTERVIEW NOTIFICATION - CLARK 020218 ................................................34

46.   EXHIBIT Z29 - 2017OPA-1080 SWORN WITNESS EMPLOYEE IN-PERSON INTERVIEW NOTIFICATION - PATTON 020618 ................................................34

47.   EXHIBIT Z20 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW NOTIFICATION - AGUIRRE 020618 ................................................................34

48.   EXHIBIT Z21 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW NOTIFICATION - JORDAN 020618 ................................................................34

49.   EXHIBIT Z22 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW NOTIFICATION - WARNOCK 020618 ................................................................34

50.   EXHIBIT Z23 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW NOTIFICATION - WOOLLUM 020618 ................................................................34

51.   EXHIBIT Z24 - 2017OPA-1080 WITNESS EMPLOYEE - INTERVIEW AVAILABILITY REQUEST - WOOLLUM 020218........................................................................34

52.   EXHIBIT Z25 - 2017OPA-1080 WITNESS OFFICER - INTERVIEW AVAILABILITY REQUEST - ABTS-OLSON 020218 ................................................................34

53.   EXHIBIT Z26 - 2017OPA-1080 WITNESS OFFICER - INTERVIEW AVAILABILITY REQUEST - CLARK 020218........................................................................34

54.   EXHIBIT Z27 - 2017OPA-1080 WITNESS OFFICER – INTERVIEW AVAILABILITY REQUEST - WARNOCK 020218........................................................................34

55.   EXHIBIT Z28 - 2017OPA-1080, LEWIS PROPOSED DAR PACKET ...........................34

56.   EXHIBIT Z29 - 2017OPA-1080, LEWIS WRITTEN REPRIMAND PACKET.................35

57.   EXHIBIT Z30 - 2017OPA-1080 COMPLAINANT VM 06-07-18 ................................35

58.   EXHIBIT Z31 - ISABELLE TO SRGT - EXPLAINING OFFICER CONDUCT - ADMITTING TO INDEPENDENT WITNESS - 6269_4020171008014644 ...........................35

59.   EXHIBIT Z32 - ARM INJURIES........................................................................35

60.   EXHIBIT Z33 - HAIR/SCALP INJURIES..........................................................35

61.   EXHIBIT Z34 - LEG CONTUSIONS..................................................................35

62.   EXHIBIT Z35 – INJURY/MEDICAL RECORDS ................................................35

November 9TH, 2018

1   I.  INTRODUCTION

2       1.  **OBLIGATION TO PERFORM UNBIASED POLICING**

3           A.  No officer of the Seattle Police Department (SPD) should ever allow their

4               gender, sexual orientation, race, or any other discernable characteristics

5               to interfere with their judgment when a crime has been committed.

6           B.  The Fourteenth Amendment states that no "State [shall] deprive any

7               person of life, liberty, or property, without due process of law; nor deny

8               to any person within its jurisdiction the equal protection of the laws."

9       2.  **HISTORY OF BIAS POLICING**

10          A.  The SPD has a history breaking the rules and policies outlined in the

11              Seattle Police Department Manual. This has resulted in bias policing,

12              excessive use of force, and corruption within the department.

13          B.  Multiple complaints, lawsuits, and investigations involving the SPD have

14              upheld the department's failure to provide services in a professional,

15              nondiscriminatory, fair, and equitable manner.

16      3.  **OBLIGATION TO APPLY LAWS EQUALLY**

17          A.  It is the SPD's job to enforce the law. The SPD is prohibited from

18              determining to whom the law applies per the Fourteenth Amendment.

19          B.  The case below demonstrates that some SPD Officers are either

20              unfamiliar with basic laws or feel that they have the authority to

21              determine who is required to follow the law and who is not.

22      4.  **RIGHT TO FREE SPEECH**

23          A.  The first amendment is arguably the most well known amendment

24              amongst the public. There are very few instances when the U.S. Supreme

25              Court has made exceptions to the First Amendment. The only categories

26              of free speech that fall outside the First Amendment's protection are:

27              obscenity, child pornography, defamation, incitement to violence and true

28              threats of violence - and even within these categories there are tests that

29              must be met in order for free speech to be illegal.

30

31   **5.  COMMON SENSE AND POLICE DISCRETION**

32        A.  While a threat of violence may in some instances be illegal, an act of
33             violence is always illegal. The Hate Crimes Prevention Act makes it illegal
34             to physically harm someone based on their race, religion, national origin,
35             gender or sexual orientation, among other characteristics. Assault is
36             defined by common law as an attempt to initiate harmful or offensive
37             contact with an individual. Battery is a criminal offense involving the
38             unlawful physical acting upon a threat. Battery is defined in common law
39             as, "any unlawful and or unwanted touching of the person of another by
40             the aggressor, or by a substance put in motion by him." All forms of
41             assault and battery are outlawed in Washington State under Chapter
42             9A.36 of the Revised Code of Washington (RCW).

43        B.  Despite these laws, it appears that the social and racial diversity on
44             Capitol Hill and in the greater Seattle metropolitan area has confused the
45             SPD into thinking that they can use their discretion to determine what the
46             law is and whom they think it should apply to.

47   **6.  CONFLICTS IN THE CLASSIFICATION OF "BIAS CRIMES"**

48        A.  According to RCW 9A.36.080 speech is only considered malicious
49             harassment if a person "threatens a specific person or group of persons
50             and places that person, or members of the specific group of persons. . .The
51             fear must be a fear that a reasonable person would have under all the
52             circumstances.... [and] a reasonable person is a reasonable person who is
53             a member of the victim's race, color, religion, ancestry, national origin,
54             gender, or sexual orientation, or who has the same mental, physical, or
55             sensory handicap as the victim."

56        B.  A man can easily have an obvious superior biological and physical
57             capability to a woman. Men and women have differences in the strengths
58             and characteristics of muscle fibers. Women are only considered to be
59             approximately 50 to 70 percent as strong as men in upper body strength.

60       C.  According to RCW 9A.36.078, ". . .A hate crime committed against a victim
61            because of the victim's gender may be identified in the same manner that
62            a hate crime committed against a victim of another protected group is
63            identified. Affirmative indications of hatred towards gender as a class is
64            the predominant factor to consider. Other factors to consider include the
65            perpetrator's use of language, slurs, or symbols expressing hatred
66            towards the victim's gender as a class; the severity of the attack including
67            mutilation of the victim's sexual organs; a history of similar attacks
68            against victims of the same gender by the perpetrator or a history of
69            similar incidents in the same area; a lack of provocation; an absence of
70            any other apparent motivation; and common sense."
71       D.  "Bitch" is a derogatory term used against women, who in comparison to
72            men, are the disadvantaged sex and are on average 50 to 70 percent as
73            strong as men in upper body strength.

74   7.  **BRIEF SUMMARY OF EVENTS**

75       A.  On October 8, 2017, at approximately 12:55am, the Plaintiff, Isabelle
76            Kerner, was sitting at the end of the platform of a cherry picker ("scissor
77            lift") illegally parked in the middle of the sidewalk outside of Nuemos on
78            the southwest corner of 10th Ave E and Pike St. She was with two friends
79            waiting for two other friends to get pizza.

80       B.  A group of men walked by and called her "a stupid fucking bitch". They
81            continued walking and someone replied, "You're the bitch" or something
82            of that sort. She had no previous verbal or physical contact with any of
83            the men. After the group of men called her "a stupid fucking bitch" she
84            turned around to resume the conversation she was having with her
85            friends. Her face was faced east and the back of her head was faced west.

86       C.  The group men ran up to the end edge of the scissor lift she was sitting
87            on, attacked her from behind, grabbed her by her hair and attempted to
88            drag her off of the 4-6 foot platform onto the concrete while they punched
89            her in the back of the head several times and continued trying to rip her
90            hair out.

91    D. The group of men then ran west down Pike street. A bystander, Zulfiquar
92      Sohaib, who witnessed the incident, intervened to stop the assault. He
93      was punched in the face by the group of men and called 911. He remained
94      on the line while following the group of men west several blocks to the
95      intersection of Harvard and Pike streets.

96    E. At the intersection of Harvard and Pike streets, Mr. Sohaib flagged down
97      one of the Defendants, SPD Officer Donovan Lewis.

98    F. Prior to responding to the Plaintiff's 911 call, the Defendants went to the
99      intersection of Harvard and Pike streets; responding to Mr. Sohaib's 911
100     call. Mr. Sohaib led the Defendants to the corner where the group of men
101     was standing. One of the men was urinating on the sidewalk with a bottle
102     of tequila in his back pocket. This is captured and acknowledged on police
103     audio and video recording.

104    G. The Defendants told the Plaintiff that she had jumped onto one of them
105     and "twisted his wrist". The Defendant(s) told the Plaintiff the attack was
106     justified by self-defense. The Defendant(s) also told the Plaintiff that the
107     group of men had "blood all over them". The Defendant(s) also told the
108     Plaintiff the only "independent witness" was friends with the group of
109     men and was on his way to meet up with them.

110    H. Prior to questioning the Plaintiff, who was waiting in an ambulance at the
111     scene of the crime and prior to running a background check on any of the
112     men or the Plaintiff, one of the Defendants, Officer Lewis, asked the men if
113     they believe they were "targeted" by the Plaintiff for their race and/or
114     sexual orientation.

115    I. The men then seized the opportunity and alleged that the Plaintiff had
116     yelled racial and homophobic slurs at them.

117  J. Defendant Officer Lewis then released the men without making any arrest
118    and traveled with another Defendant, SPD Sergeant Raguso, and went to
119    the scene where the attack occurred and where the Plaintiff was waiting
120    in an ambulance. Upon his arrival, Officer Lewis immediately accused the
121    Plaintiff of making the racial and homophobic remarks the group of men
122    alleged and implied she deserved to be attacked.

123  K. The Defendants knew or should have known that a 5 foot 7 inch 108
124    pound female sitting at the end of a 6 foot platform is neither capable of
125    nor would be compelled to engage in a physical fight against a group of
126    men almost double her size. The Plaintiff was also virtually encaged on
127    the platform she was sitting on. The Defendants implied that the
128    accusatory statements suggested by the men justified the attack and that
129    the Plaintiff was at fault for the incident.

130  L. Through this action, Isabelle Kerner, seeks to hold the Seattle Police
131    Department collectively accountable for failing to enforce the law and for
132    failing to follow the SPD guidelines pursuant to RCW 9A.36.080, for
133    knowingly falsifying the police report pursuant to RCW 42.20.040, for
134    failing to uphold their duties pursuant to RCW 42.20.100, for violating
135    their code of conduct and failing to investigate pursuant to RCW
136    42.20.080, for Official Misconduct pursuant to RCW 9A.80.010, and for
137    violating the Plaintiff's Fourteenth Amendment of Due Process and Equal
138    protection of the laws outlined in the United States Constitution.

139 II. JURISDICTION AND VENUE

140  1. **KING COUNTY DISTRICT COURT**

141  A. The Jurisdiction of the King County District Court invoked pursuant to the
142    Civil Rights Act, RCW 3.66.020, and the Constitution of the United States.

143  B. The Venue is proper in this District under 28 U.S. Code § 1391 (e) and
144    RCW 3.66.040. The parties reside in this judicial district at time these
145    events occurred and the events giving rise to Plaintiff's claims also
146    occurred in this judicial district.

147     III.  PARTIES

148          1.  **ISABELLE KERNER**

149               A.  Plaintiff Isabelle Kerner is an individual residing in Seattle, Washington.
150                    Isabelle Kerner was born and raised in Seattle, Washington.

151          2.  **SEATTLE POLICE DEPARTMENT**

152               A.  Defendant Seattle Police Department is a municipal corporation, duly
153                    incorporated under the laws of Washington State, is the employer and
154                    principal of the defendant police officers, and is responsible for the
155                    policies, practices and customs of its Police Department, City Council,
156                    Office of Professional Accountability, and Police Board.

157     IV.  FACTUAL ALLEGATIONS

158          1.  **TITLE 5, SECTION 1, ARTICLES 2, 10, 11, 13, AND 14 OF THE SPD POLICES**
159               **MANUAL**

160               A.  5.001-POL Article 2 states Defendants must adhere to the laws, policies
161                    and procedures outlined by the federal, state, City of Seattle, and Seattle
162                    Police Manual.

163               B.  5.001-POL Article 10 states Defendants must strive to be professional.

164               C.  5.001-POL Article 11 states Defendants must be truthful in all
165                    communication

166               D.  5.001-POL Article 13 states Defendants must not use their authority for
167                    personal gain.

168               E.  5.001-POL Article 14 states Defendants are prohibited from retaliating
169                    against any person who provides a testimony related to a complaint of
170                    allegation of misconduct.

171          2.  **THE INCIDENT – 17-374035**

172               A.  This incident took place on October 8, 2017 when the Plaintiff was
173                    physically and verbally assaulted by a group of men on Capitol Hill.

| 174 | | B. | On October 8, 2017 at approximately 12:55am, the Plaintiff called 911 |
| 175 | | | after a group of men attacked her while she was sitting on the end of a |
| 176 | | | scissor lift with two other friends approximately 4-6 feet above ground |
| 177 | | | level on the Southwest corner of 10th Avenue East and Pike Street on |
| 178 | | | Capitol Hill. |
| 179 | | C. | The incident began as one of the men yelled that the Plaintiff was a |
| 180 | | | "stupid fucking bitch" as they walked past the lift. |
| 181 | | D. | The Plaintiff and turned around to continue the conversation she was |
| 182 | | | having with her two friends sitting next to her. |
| 183 | | E. | While the Plaintiff was facing east, the men approached the Plaintiff from |
| 184 | | | the west, grabbed the Plaintiff by her hair and attempted to drag her off of |
| 185 | | | the lift onto the concrete while punching her multiple times in the head. |
| 186 | | F. | The men continued their attempt to drag the Plaintiff off of the lift. The |
| 187 | | | Plaintiff resisted by wrapping her arms and legs around the bars of the |
| 188 | | | encaged end of the lift. |
| 189 | | G. | The Plaintiff vividly remembers staring at the concrete below her as she |
| 190 | | | was dangling 4-6 feet above the ground. |
| 191 | | H. | The group of men punched the Plaintiff several times in the back of the |
| 192 | | | head and continued to try and rip out her hair. |
| 193 | | I. | The Plaintiff clung to the bars of the lift with her legs and one of her arms |
| 194 | | | resulting in several contusions on her arm and both legs. |
| 195 | | J. | The men continued to assault the Plaintiff until an independent witness, |
| 196 | | | Zulfiquar Sohaib, intervened and pulled the men off of the Plaintiff. |
| 197 | | K. | One of the men, Francisco Hayward, then punched the witness, Zulfiquar |
| 198 | | | Sohaib, in the face. |
| 199 | | L. | The assailants all began running west down Pike street. |
| 200 | | M. | Mr. Sohaib immediately called 911 and remained online with the 911 |
| 201 | | | operators while he followed the men down Pike street. |
| 202 | | N. | The 911 operator directed Mr. Sohaib to night shift patrol SPD officers, |
| 203 | | | one of which was Defendant, Officer Donovan Lewis. |

| 204 | O. | Mr. Sohaib mentioned to the 911 operator and to responding officers that |
|-----|----|----|
| 205 | | the group of men verbally threatened him three times while he was |
| 206 | | following them and were attempting to pick fights with other individuals |
| 207 | | along the way. |

208    P.  Defendants Locate Alleged Assailants

209    Q.  Mr. Sohaib identified the attackers who were standing in the middle of
210        the sidewalk on the corner of Harvard and Pike street.

211    R.  One of the men was captured on the Defendant's body cam video
212        urinating in the middle of the sidewalk with an open bottle of tequila in
213        his back pocket.

214    S.  The Defendants are captured on video verbally acknowledging that the
215        man was violating Ordinance 9.26.070 by urinating in public and
216        violating Seattle Municipal Code 18.12.278 by having an open container
217        of alcohol in public.

218    T.  The Defendants did not cite the man for either of the two violations.

219    U.  Defendant Officer Lewis is captured on video speaking privately with Mr.
220        Sohaib and the group of men without his audio cam turned on.

221    V.  Mr. Sohaib explains to the Defendants that he does not know a single
222        person involved in the incident, does not care about being punched in the
223        face, but does not want the men to get away, as he witnessed them attack
224        the Plaintiff and believes they "really hurt her".

225    W.  Mr. Sohaib is captured speaking with Mr. Hayward and asking him
226        whether or not he remembers punching him in the face and trying to drag
227        the girl off of the lift by her hair.

228    X.  Officer Lewis is captured on video trying to convince Mr. Sohaib to drop
229        any charges because Mr. Hayward and his friends are "trying to come in
230        peace".

231    Y.  The Defendants categorized the crime as a "Bias Crime," classifying it on
232        the police report as "anti-homosexual (gay/lesbian)".

233    3.  **RCW 9A.36.080**

234       A. RCW 9A.36.080 defines malicious harassment as maliciously and
235           intentionally physically injuring, physically damaging or threatening a
236           specific person or group of people because of his or her perception of the
237           victim's race, color, religion, ancestry, national origin, gender, sexual
238           orientation, or mental, physical, or sensory handicap. "The fear must be a
239           fear that a reasonable person would have under all the circumstances.
240           For purposes of this section, a "reasonable person" is a reasonable person
241           who is a member of the victim's race, color, religion, ancestry, national
242           origin, gender, or sexual orientation, or who has the same mental,
243           physical, or sensory handicap as the victim. Words alone do not
244           constitute malicious harassment unless the context or circumstances
245           surrounding the words indicate the words are a threat. Threatening
246           words do not constitute malicious harassment if it is apparent to the
247           victim that the person does not have the ability to carry out the threat."

248       B. The group of men alleged that the Plaintiff had yelled racial and
249           homophobic slurs at the men, calling them "niggers and faggots" only
250           after one of the Defendants, Officer Donovan Lewis, suggested this.

251       C. The Plaintiff is a 110 pound 5 foot 6 inch female with no previous charges
252           or convictions for any crime.

253       D. The Plaintiff denied making any of these remarks and offered to take a
254           polygraph to prove her innocence.

255       E. The Plaintiff was born and raised in Seattle, WA, attended Garfield High
256           School where approximately 60% of the student population are
257           minorities.

258       F. The reason the Plaintiff was sitting on the lift was to avoid any possible
259           danger by staying out of the crowded sidewalk where she has seen fights
260           break out. She was waiting for two of her friends she met at Garfield High
261           School, one of whom is African American, to get pizza.

262     **4. DEFENDANTS ABUSE DISCRETION**

263    A. Any one of the Defendants have the technology and ability to run an
264       individual's name through their database to check the criminal record of
265       that individual at any given time. This information is provided to the
266       Defendant and funded by the public so that they can use their knowledge
267       of an individual's prior history to exercise their discretion and protect the
268       public.

269    B. The men alleged to officers that the Plaintiff tried to grab one of the men,
270       Israel Ragunton's, by the wrist and "attack" him.

271    C. Mr. Hayward admitted to officers that he grabbed and pulled the Plaintiffs
272       hair in an attempt to "pull her off" of Mr. Ragunton.

273    D. Mr. Ragunton is 6 feet tall and weighs 190 lbs.

274    E. Mr. Hayward is 5 feet tall, weighs 140 lbs. and has multiple prior charges,
275       convictions and protection orders against him for assault, DUI's,
276       possession of a stolen vehicle, forgery, ect. Mr. Hayward was arrested
277       twice for assault after this incident in the same vicinity where it originally
278       occurred.

279    F. The only injury discussed in detail within the Defendant's police report
280       was Mr. Ragunton's broken fingernail.

281    G. At the time of this incident, Mr. Ragunton's nails were approximately 2-3
282       inches long and were likely "injured" from trying to rip the Plaintiff off of
283       the lift by her hair.

284    H. After questioning the men and before questioning the Plaintiff, the
285       Defendants are captured on video laughing with the group of men about
286       how the Plaintiff was lucky no one had a gun or a knife.

287    I. Just before their departure to the scene where the incident occurred, the
288       Defendants are captured on audio saying, "Alright, let's find these girls
289       and hold'em".

290    J. Defendants Intentionally Disabled Audio and/or Video Devices

291    K. After releasing all of the men, the Defendants headed to 10th Ave and
292       East Pike Street where the Plaintiff was waiting in an ambulance.

293      L. Several of the Defendants traveled by foot to the scene where the Plaintiff
294          was waiting while another Defendant, Sergeant Raguso, accompanied
295          Officer Lewis in a patrol car. Defendant Sergeant Raguso disabled or
296          turned off his audio recorder during this ride.

297      M. At least one of the Defendants intentionally turned off or deleted the
298          audio and/or video recordings of the Plaintiff after assuring the Plaintiff
299          the interaction between the Plaintiff and the Defendants was being
300          recorded.

301      **5.  DEFENDANTS APPROACH SCENE OF INCIDENT AND ENCOUNTER PLAINTIFF**

302      A.  The Plaintiff had a series of injuries including, a swollen right knee, a
303          swollen left knee, a football sized contusion on her right thigh, swelling
304          on her scalp, contusions on her left arm, contusions on her right arm, a
305          dime sized cut on her right elbow and bald spots in the areas that the
306          attackers had ripped out her hair.

307      B. The Plaintiff was very distressed and in a considerable amount of pain
308          when the Defendants arrived.

309      C. Upon entering the ambulance one of the Defendants, Officer Lewis,
310          scoffed at the Plaintiff and said "So what's wrong with you?"

311      D. Prior to his arrival, Defendant Officer Lewis was very fired up and
312          appeared angry. Two paramedics who were in the ambulance at this time
313          as well as one of the Plaintiff's friends corroborate this. It is also
314          corroborated multiple times in the related OPA case file.

315      E. The Plaintiff then told Defendant, Officer Lewis, what had happened.

316      F. The Plaintiff immediately recognized Defendant Officer Lewis's contempt
317          against her as he continued to speak to the Plaintiff in an intimidating and
318          aggressive tone.

319      G. Defendant Officer Lewis then accused the Plaintiff of yelling racial and
320          homophobic slurs at the three attackers.

321      **6.  DEFENDANTS INTENTIONALLY FALSIFY INFORMATION**

322       A. When the Plaintiff asked Defendant Officer Lewis if she could videotape
323           him while he spoke to her so she could retain evidence of his misconduct,
324           he slapped his chest to a red flashing device and said, "See this? It's
325           already being recorded".

326       B. There is no evidence of any audio recording inside the ambulance where
327           Defendant Officer Lewis interrogated the Plaintiff despite the fact that his
328           audio recorder was on.

329       C. The incident was classified as a "disturbance/other" in the GO database
330           and as an "anti homosexual gay/lesbian crime" on the incident report.

331       D. Defendant Officer Lewis gave the Plaintiff a business card with a case
332           number that never existed.

333      **7. DEFENDANTS BLAME PLAINTIFF FOR ASSAULT**

334       A. Defendant Officer Lewis exited the AMR vehicle to consult with other
335           responding Defendants and is quoted in the AMR report; paramedic
336           recorded interviews and heard by the Plaintiff and her friends referring
337           to the Plaintiff as "a crazy white girl".

338       B. The above referenced statement made by said Defendant(s) violates
339           Titles 5, Section 1 of the SPD Policies and Procedures Manual.

340       C. The AMR report and paramedic interviews also note Officer Lewis's "very
341           abrasive tone and aggressive affect". Two bystanders are recorded on
342           audio expressing their anger and lack of understanding as to why the men
343           were not arrested, stating that, "I don't care who said what, anytime you
344           have a bodily injury from an assault, someone needs to go to jail".

345      **8. TITLE 15, SECTION 120-POL IN VIEW OF RCW 9A.36.080 AND SMC**
346           **12A.06.115**

347       A. Title 15, Section 120-POL outlines the policies pertaining to the Seattle
348           Police Department's responses to cases of "malicious harassment and
349           other incidents involving bias elements".

350        B. Per RCW 9A.36.080 and SMC 12A.06.115, a person is guilty of malicious
351           harassment if, because of his or her perception of another person's race, color,
352           religion, ancestry, national origin, gender, sexual orientation, or mental,
353           physical, or sensory handicap (felony), homelessness, marital status, political
354           ideology, age, or parental status (misdemeanor), he or she maliciously and
355           intentionally commits at least one of the following acts: causes physical injury
356           to another person, by threat, places another person in reasonable fear of harm
357           to his or her person or property or to the person or property of a third person,
358           or causes physical damage to or destruction of the property of another person.
359        C. Title 15, Section 120-POL, Chapter 2 of the Seattle Police Department
360           manual states "A Sergeant will be dispatched to the Scene of a Malicious
361           Harassment Incident Along with the Patrol Officers".
362        D. The sergeant will make sure that the officers conduct a thorough
363           investigation at the scene of the incident, with special emphasis placed on
364           preserving physical evidence.
365        E. When the Plaintiff asked one of the Defendants, Officer Lewis, who had
366           obviously taken the lead on this incident, why none of the men were
367           arrested, he told her it was because this is a bias crime and there are no
368           "unbiased, independent" witnesses.
369        F. When the Plaintiff asked the Defendants about Mr. Sohaib, Officer Lewis
370           told her he was friends with all of the men and was on his way to meet up
371           with them. The Defendant said that all Mr. Sohaib wanted was an apology
372           and that he dropped all charges once Mr. Hayward apologized. These
373           remarks are strongly contradicted by body cam videos of the Defendant's
374           interaction with Mr. Sohaib and the assailants as well as Mr. Sohaib's 911
375           call.
376        G. There were many people around at the time of the incident. The
377           Defendants did not attempt to find any other witnesses, did not take any
378           photographs, or preserve any evidence, despite their official duty to do so
379           per Title 15, Section 120 of the SPD Policies and Procedures Manual in
380           view of RCW 9A.36.080 and SMC 12A.06.115.

381     **9.  DEFENDANTS VIOLATE RCW 9A.80.010 – OFFICIAL MISCONDUCT**

382         A.  When the Plaintiff asked the Defendants if another officer could come to
383             take her report, Officer Lewis responded sarcastically saying, "Do you
384             want me to call the Sergeant over? She's already at the other scene with
385             the other party?"

386         B.  The Plaintiff responded, "Yes, I would like the Sergeant to come."
387             Defendant, Officer Lewis said," Fine, I'll call her over."

388         C.  There is no record of the Defendant, Sergeant Woolum, ever being at
389             Harvard and Pike street where the Defendants initially encountered the
390             assailants.

391         D.  Further, the Plaintiff asked Defendant Sergeant Woolum to ensure that
392             Defendant Officer Lewis did not write the police report.

393         E.  Defendant Sergeant Woolum told the Plaintiff that it wasn't possible to
394             have another one of the Defendants file the report. Defendant Sergeant
395             Woolum offered to file a complaint with the OPA on the Plaintiff's
396             behalf—a gesture that seemed genuine to the Plaintiff at the time.

397         F.  The Plaintiff informed Defendant Sergeant Woolum that she would be
398             filing a complaint herself and "was not going to just let this incident go".

399         G.  Several days after the incident, Defendant Sergeant Woolum filed an OPA
400             complaint against Defendant Officer Lewis.

401         H.  The OPA complaint filed by Defendant Sergeant Woolum came days after
402             repeated phone calls and visits to the East Precinct Department by the
403             Plaintiff which resulted in unsuccessful attempts to submit physical
404             evidence and have her injuries photographed and documented and sent
405             for review by the "homicide detective."

406         I.  When a crime is classified as "Bias" it is required for the Sergeant to be
407             dispatched along with other patrol officers to ensure that a thorough
408             investigation is conducted and all physical evidence is preserved.

409         J.  Given the Defendants' classification of this incident as a bias crime in the
410             incident report, the Sargent should have been immediately dispatched to
411             both scenes per the guidelines in Title 15 of the SPD Manual.

| 412 | K. One of the AMR officers stepped outside of the vehicle informing the |
| 413 | Defendants that the Plaintiff needed to be transported to the hospital and |
| 414 | asked if the Sergeant could meet the Plaintiff at the hospital. |

412    K. One of the AMR officers stepped outside of the vehicle informing the
413        Defendants that the Plaintiff needed to be transported to the hospital and
414        asked if the Sergeant could meet the Plaintiff at the hospital.

415    L. The Defendants replied no and are then captured on video after the
416        paramedic returned inside the AMR vehicle laughing about the request,
417        saying "No, sorry the Sergeant isn't going to come to the hospital for you".

418    M. Aside from the Sergeant, who appeared nearly an hour after the
419        responding Defendants arrived, every one of the assailants and all of the
420        Defendants were male.

421    N. According to Title 15, Section 120, Article 2 of the SPD manual, the
422        Sergeant should have been dispatched to the scene along with patrol
423        officers, not after the Plaintiff explicitly requested another the Sergeant
424        come.

425    O. On the way to the Emergency Room at Virginia Mason hospital, one of the
426        paramedics offered the Plaintiff a bag to collect the hair that the attackers
427        ripped from the victim's head and was continuously falling out.

428    P. Defendants refused to preserve physical evidence on multiple occasions.

429    **10. DEFENDANTS VIOLATE RCW 42.20.100 – FAILURE OF DUTY**

430    A. That same day, on October 8th, the Plaintiff returned to the East Precinct
431        to submit the evidence bag of hair and requested that Defendants take
432        photos of her injuries.

433    B. A Defendant at the front desk informed her that they don't accept
434        physical evidence "for these types of cases".

435    C. This Defendant was clearly under the impression that this was a
436        "disturbance/other" case, as classified in the GO database—a mistake the
437        Plaintiff believes Defendant Officer Lewis, et al, intentionally made to
438        further discredit her testimony and prevent further investigation into the
439        incident.

440    D. The Plaintiff returned several times urging the Defendants to submit the
441        evidence. Each time, the Defendants refused to accept the evidence
442        despite the fact that the Defendants should have initially made efforts to
443        preserve all physical evidence per the SPD guidelines of Title 15.

444    **11. PLAINTIFF     FILES     COMPLAINT     WITH     OFFICE     OF     PROFESSIONAL**
445        **ACCOUNTABILITY (OPA)**

446    A. Several days later, the Plaintiff went down to the OPA to file her own
447        complaint against the Defendants and submitted a request for disclosure
448        of all reports, police audio and videotapes.

449    B. Her request for disclosure was stalled as Defendant Officer Lewis had
450        given the Plaintiff a business card with a case number that didn't exist.
451        The Plaintiff has maintained a copy of this card to this day and also
452        submitted a photograph of it to the Defendants at the OPA.

453    C. The Plaintiff was unaware of this error until the Public Disclosure Unit
454        informed her that no such case number existed.

455    **12. DEFENDANT(S) INTIMIDATE OPA INVESTIGATION WITNESSES VIOLATING**

456    A. About a month and a half after the incident, Defendant Officer Lewis,
457        went to Cactus restaurant in Madison Park to eat while he was off-duty.
458        One of the Plaintiff's friends, Natalie Caldwell, who was with her that
459        night and traveled in the ambulance with her was working and
460        recognized the Defendant. The Defendant also recognized Ms. Caldwell.
461        He approached her and aggressively said, "You're that girl who yelled at
462        me that one night on Capitol Hill."

463    B. This encounter was unprofessional, inappropriate, intimidating and
464        provides factual evidence of retaliation given Ms. Caldwell is listed as one
465        of the witnesses in the OPA investigation against the Defendant(s).

466    **13. PHYSICAL AND MENTAL IMPLICATIONS OF DEFENDANTS RESPONSE TO**
467        **INCIDENT**

468    A. On Thursday, October 12th, the Defendant went to an appointment with
469        her hairstylist.

470          B. The Defendant's hair stylist, Madison Walker, has been cutting her hair
471             since she was in 4th Grade.
472          C. When examining the Defendant's scalp, Ms. Walker began crying and
473             estimated that at least 25% of her hair had been ripped from her scalp.
474          D. Ms. Walker was not able to assure the Defendant that the hair would
475             grow back, as five days after the incident the bruising and redness was
476             still evident.
477          E. Ms. Walker urged the Plaintiff to see a dermatologist as soon as possible.
478          F. The Plaintiff consulted two different dermatologists who informed her
479             that her hair might grow back, but more hair may fall out in three months
480             due to the physical and emotional stress of the incident.
481          G. On October 15, 2017, the Plaintiff returned to the Virginia Mason
482             Emergency Room.
483          H. The Plaintiff returned due to concern regarding worsening head and scalp
484             pain along with depressed mood, flashing in her peripheral vision, and
485             the feeling that was going to die.
486          I. The Plaintiff was released and advised to immediately seek treatment for
487             anxiety and trauma regarding the incident and the way it was handled by
488             the Defendants.
489          J. On December 22, 2017, a psychiatrist evaluated the Plaintiff.
490          K. The Plaintiff underwent this evaluation for continued nightmares,
491             extreme anxiety and hyper vigilance at night.
492          L. She was diagnosed with acute stress disorder and was prescribed a
493             medication typically prescribed to veterans with PTSD to reduce
494             nightmares and was urged to seek therapy to prevent the development of
495             PTSD.
496          M. The Plaintiff contacted multiple therapists but was unable to get
497             treatment due to financial restrictions and limited scope of professionals
498             contracted with her health insurance plan.
499          N. On February 17, the Plaintiff returned to her dermatologist.
500             She was evaluated for increased hair loss.

501     O. Her dermatologist confirmed that she had lost more hair since she was
502        seen in October and that the cause was most likely due to stress from the
503        incident, which triggered surrounding hair follicles to go into a resting
504        stage.

505     P. This case was never assigned to a homicide detective and while the
506        concluded OPA investigation found some of the Plaintiff's allegations to
507        be sustained, the Plaintiff is seeking further reaffirmation to uphold the
508        serious. At the time of filing this Complaint, no detective has been
509        assigned to this case.

510   V. FIRST CAUSE OF ACTION

511   1. **OFFICIAL MISCONDUCT RCW 9A.80.010**

512     A. RCW 9A.80.010 states that a public servant is guilty of Official Misconduct
513        if with intent to deprive another person of a lawful right or privilege, he
514        or she intentionally refrains from performing a duty imposed upon him
515        or her by law.

516     B. Any elected, appointed, or designated officer or employee of government,
517        and any person participating as an advisor, consultant, or otherwise in
518        performing a governmental function; is considered a "public servant"
519        pursuant to the definition outlined in Section 9 of RCW 9A.04.110.

520      C.  The Defendants engaged in Official Misconduct via their failing to uphold
521           the policies and procedures outlined in the SPD Manual, denying the
522           Plaintiff equal protection of the laws as set forth in the Fourteenth
523           Amendment of the United States Constitution, engaging in bias-policing,
524           attempting to discredit the Plaintiff in the written police report, failing to
525           conduct a thorough investigation, failing to acknowledge statements
526           made by the only independent witness, and ignoring the Plaintiff's First
527           Amendment right to free speech, as even if the Plaintiff had made the
528           verbal remarks alleged by her assailants and restated in the OPA
529           investigation by Defendant Officer Lewis, which she did not, those
530           remarks would still not justify assault or battery as defined by common
531           law.

532    VI.  SECOND CAUSE OF ACTION

533      1.  **FALSE REPORT RCW 42.20.040**

534      A.  RCW 42.20.040 states that no public officer shall knowingly make any
535           false or misleading statement in any official report or statement, under
536           circumstances not otherwise prohibited by law.

537      B.  The Defendants made numerous misleading statements and falsifications
538           on the official police report.

539      C.  On the report, Defendant Officer Lewis listed the Plaintiff as having a drug
540           and alcohol disability. The Plaintiff has never been charged, convicted, or
541           arrested for any drug or alcohol related offense. She told Officer Lewis
542           that she had not had a drink for two hours prior to the incident and only
543           had two drinks, a bloody mary and a vodka soda, that night between 9:00
544           and 10:00pm.

545      D.  Francisco Hayward, one of the assailants who was questioned by the
546           Defendants, has been arrested for multiple DUI's as well as a violation of
547           DUI ignition interlock devices.

| | | |
|---|---|---|
| 548 | E. | Another one of the men, who is not identified on the police report at all, |
| 549 | | was captured on body-cam video urinating in the middle of the sidewalk |
| 550 | | with an open container of tequila in his back pocket. |
| 551 | F. | The Defendants verbally acknowledged this violation but did not issue |
| 552 | | any citation or even a warning. |
| 553 | G. | The Defendants classified this case as an "Anti-homosexual (gay/lesbian)" |
| 554 | | crime on the incident report, implying that the Plaintiff was at fault for |
| 555 | | the entire incident. |
| 556 | H. | The Defendant's incident report excludes the assault against the Plaintiff |
| 557 | | and no details surrounding the Plaintiff's injuries are included. |
| 558 | I. | The plaintiff is a female and suffered numerous documented bodily |
| 559 | | injuries that required two separate visits to the ER. |
| 560 | J. | The Plaintiff was attacked by a group of men that were positively |
| 561 | | identified by the independent witness, Mr. Sohaib, who was also |
| 562 | | assaulted by the men when he attempted to stop the assault. |
| 563 | K. | The independent witness also called 911 at the same time the Plaintiff |
| 564 | | called 911 and it was immediately determined that the cases were |
| 565 | | related. |
| 566 | L. | Defendant, Officer Lewis, failed to mention or detail the assault in the |
| 567 | | official police report, yet described in great detail Mr. Ragunton's broken |
| 568 | | nail. |
| 569 | M. | Defendant Officer Lewis also lied to the Plaintiff about the relationship of |
| 570 | | the independent witness, Mr. Sohaib, to the group of men who assaulted |
| 571 | | the Plaintiff and Mr. Sohaib. |
| 572 | N. | Defendant Officer Lewis told the Plaintiff the men had "blood all over |
| 573 | | them," that the independent witness was not actually an independent |
| 574 | | witness because he was friends with all of them and was on his way to |
| 575 | | meet up with them. |
| 576 | O. | Surely, this would be corroborated had the audio recording evidence of |
| 577 | | Defendant Officer Lewis making these statements hadn't mysteriously |
| 578 | | disappeared. |

| 579 | | P. | Defendant Officer Lewis's justification of his conduct, reporting, and |

579      P.   Defendant Officer Lewis's justification of his conduct, reporting, and
580        performance was greatly influenced by the other parties' allegations that
581        the Plaintiff had yelled racial and homophobic slurs at the men, an
582        insinuation Defendant Officer Lewis was actually the first to suggest.

583      Q.   The men who assaulted the Plaintiff obviously seized this opportunity
584        knowing that they were guilty of committing a serious crime.

585      R.   Defendant Officer Lewis intentionally attempted to discredit the Plaintiff
586        and frame the Plaintiff as the one at fault for the incident by intentionally
587        excluding relevant information, exaggerating irrelevant information, and
588        switching the physical descriptions of Mr. Ragunton and Mr. Hayward to
589        make his report sound more accurate. In doing so, Defendant Officer
590        Lewis involved other Defendants who were present during this incident
591        and approved, reviewed, signed off on his written incident report.

592    VII.   THIRD CAUSE OF ACTION

593      1.   **FAILURE OF DUTY RCW 42.20.100 IN VIEW OF RCW 9A.36.080 MALICIOUS**
594        **HARASSMENT**

595      A.   RCW 42.20.100 states that willful neglect of any duty enjoined by law
596        upon any public officer constitutes failure of duty. The Defendants failed
597        to perform their duties pursuant to the SPD guidelines set forth for
598        violations pertaining to RCW

599      B.   RCW 9A.36.080 states that a person is guilty of malicious harassment if
600        he or she maliciously and intentionally causes physical injury to the
601        victim or another person, threatens a specific person or group of persons
602        and places that person, or members of the specific group of persons
603        because of his or her perception of the victim's race, color, gender or
604        sexual orientation. The fear must be a fear that a reasonable person who
605        is a member of the victim's race, color, gender, or sexual orientation as
606        the victim would have under all of the circumstances. Words alone do not
607        constitute malicious harassment unless the context or circumstances
608        surrounding the words indicate the words are a threat.

609         C. Threatening words do not constitute malicious harassment if it is
610             apparent to the victim that the person does not have the ability to carry
611             out the threat.

612         D. The Defendants classified this case as an "Anti-homosexual (gay/lesbian)
613             crime".

614         E. According the SPD Manual, specific policies and procedures must be
615             followed for all hate crimes or crimes with bias elements.

616         F. Section 2 of 15.120 – POL states that a Sergeant will be dispatched to the
617             scene of a harassment incident along with the patrol officers. The
618             Sergeant will make sure that the officers conduct a thorough investigation
619             at the scene of the incident, with special emphasis placed on preserving
620             physical evidence.

621         G. The Defendants dispatched a Sergeant to the scene where the suspects
622             were questioned, but did not dispatch a Sergeant to the scene where the
623             incident occurred and where the Plaintiff was waiting in an Ambulance
624             until the Plaintiff requested one respond and one arrived at least an hour
625             later.

626         H. No investigation was conducted and all of the men who assaulted the
627             Plaintiff were released before any of the Defendants arrived to the scene
628             of the alleged crime where the Plaintiff was waiting in an ambulance.

629         I. It was not until the Plaintiff explicitly requested another officer be
630             dispatched to the scene that Defendant Officer Lewis said, "What do you
631             want me to do? Call the Sergeant? She's already down the street with the
632             other 'victims'".

633         J. While Defendant Officer Lewis referred to Defendant Sergeant Woolum,
634             she was actually never at the scene where the group of men were
635             questioned. It was actually Defendant Sergeant Raguso who responded to
636             the site where the men were questioned.

637         K. At this stage, all of the responding Defendants, including Defendant
638             Sergeant Raguso, were male.

639        L. The Sergeant should have been immediately dispatched to the scene
640           where the incident occurred and the Plaintiff was waiting along with
641           patrol officers.

642        M. The Plaintiff is a female who was assaulted by a group of men and then
643           further accused and aggressively questioned by the Defendants who were
644           all men.

645        N. The physical capabilities of men are already much greater than that of
646           women due to biological differences in size, strength, muscle fibers, and
647           ability to execute force.

648        O. No physical evidence was preserved, no photographs were taken, and no
649           attempt was made by the Defendants to find other individuals who had
650           also witnessed the assault.

651        P. The Plaintiff also offered to take a polygraph to prove the allegations
652           made by the Defendants and the men who assaulted her were completely
653           fabricated and unrelated to the assault.

654        Q. Defendant Sergeant Woolum, who was the only other female involved in
655           this incident, filed a complaint with the Office of Professional
656           Accountability (OPA) against responding patrol officers days after the
657           incident. While the Plaintiff initially thought Defendant Sergeant Woolum
658           was standing up for the extreme atrocities of this incident and the way it
659           was handled, it has become increasingly evident Defendant Sergeant
660           Woolum filed this complaint to protect herself — perhaps once she
661           realized the Plaintiff really was not going to just forget about the incident
662           and "let it go".

663    VIII.  FOURTH CAUSE OF ACTION

664        1. **FAILURE OF DUTY RCW 42.20.100 IN VIEW OF RCW 9A.36.011 AND RCW**
665           **10.31.100**

666       A.  RCW 42.20.100 states that willful neglect of any duty enjoined by law
667          upon any public officer constitutes failure of duty. The Defendants failed
668          to perform their duties pursuant to the SPD guidelines set forth for
669          violations pertaining to RCW 9A.36.011.

670       B.  RCW 9A.36.011 states that a person is guilty of assault in the first degree
671          if he or she, with intent to inflict great bodily harm, assaults another by
672          any force or means likely to produce great bodily harm or death; or
673          assaults another and inflicts great bodily harm.

674       C.  When the group of men physically assaulted the Plaintiff, she was neither
675          in a position to defend herself nor had the physical capabilities to carry
676          out the allegations made against her. This should have been immediately
677          apparent to the responding Defendants. An independent witness also
678          called 911 to report the assault and followed the men to ensure they
679          would be apprehended for assaulting the Plaintiff. It is very unlikely that
680          the men who assaulted the Plaintiff and the independent witness would
681          run away without calling 911 to report the assault if they were not
682          actually the perpetrators of the incident.

683       D.  Defendant Officer Lewis questioned the independent witness behind a
684          corner outside the view of all other Defendants' body cameras and audio
685          recorders.

686       E.  Defendant Officer Lewis did not turn on his audio recorder; therefore
687          there is no audio record or video recording of him questioning the
688          independent witness.

689       F.  Though at least one of the men who assaulted the Plaintiff was a repeat,
690          violent offender with multiple previous felony assault charges and at least
691          one felony assault conviction, the Defendants released all men before
692          they responded to the scene where the Plaintiff was waiting in an
693          ambulance and did not do a criminal background check on the Plaintiff or
694          any of the other parties involved.

695     G.  The Defendants informed the Plaintiff that the men were also injured and
696         "had blood everywhere". This is a false statement as the only injury
697         sustained by all member of the party was a broken nail.

698     H.  The Defendants should have made at least one arrest and/or should have
699         followed their Official Duty to protect the Plaintiff by providing her with
700         the resources and information needed to file a protection order against
701         the men. They did not.

702     I.  None of the men called 911 or attempted to report their allegations
703         against the Plaintiff to the Defendants. Instead, they ran away from the
704         scene of the incident and made these allegations after the independent
705         witness called 911, followed the men several blocks west down Pike
706         street and led responding Defendants to their location.

707     J.  The group of men identified by the Plaintiff and the independent witness
708         fled the scene where they assaulted the Plaintiff and not a single one of
709         them reported or attempted to report their allegations against the
710         Plaintiff until the Defendants approached them and Defendant Officer
711         Lewis asked if they believe they were "targeted" by the Plaintiff because
712         of their race and/or sexual orientation.

713     K.  The Defendants are captured on video and audio talking to the group of
714         men about how the Plaintiff was lucky "no one had a gun or a knife,"
715         implying that she deserved to die and also implying that if any of them
716         had a gun or a knife at the time this incident occurred, the Plaintiff would
717         likely be dead.

718     L.  At least one of the Defendants, Officer Lewis, failed to activate his audio
719         recording device.

720     M.  It is clear in the video footage that his audio recorder is turned off as no
721         red light is flashing while he is questioning the men and the independent
722         witness behind a storefront outside the range of other Defendants audio
723         and video recorders.

724     N.  In the ambulance, the Plaintiff asked Defendant Officer Lewis if she could
725         use her cell phone to videotape and record his conduct with her.

726          O. He aggressively slapped the red flashing device on his chest and informed
727             her it was already being recorded. There are several witnesses to
728             corroborate this account.

729          P. No such audio recording of Defendant Officer Lewis appears to exist. The
730             Plaintiff has been provided with all available and accessible records from
731             the Seattle Police Department Public Disclosure Unit and the audio
732             recordings of Defendant Officer Lewis have either mysteriously
733             disappeared and/or cannot be found in any record of this case.

734    IX.  FIFTH CAUSE OF ACTION

735      1. VIOLATION OF THE FIFTH AMENDMENT
736         A. The Fifth Amendment of the United States Constitution states that "No
737            person. . . shall be compelled in any criminal case to be a witness against
738            himself, nor be deprived of life, liberty, or property, without due process
739            of law. . . without just compensation."

740         B. The Defendant's failure to follow proper SPD policies and procedures,
741            falsely reporting the aforementioned incident, and avoiding investigation
742            of the incident, is an abuse their discretion — whether intentional or not,
743            this is a violation of the Plaintiff's Fifth Amendment right to Due Process.

744         C. The Defendants deprived the Plaintiff of her life and liberty:
745            psychologically, emotionally, and financially.

746         D. In their response to this incident, the Defendants not only failed to
747            perform their Official Duty, as defined by RCW, SMC, and SPD laws and
748            standards, but also projected their own institutional deficiencies onto the
749            Plaintiff by releasing the suspects before interviewing the Plaintiff or
750            arriving at the scene where the incident originally occurred, prematurely
751            determining the nature and cause of the incident, falsely reporting the
752            incident to justify these deficiencies, and further attempting to intervene
753            in the outcome of the Plaintiff's OPA complaint by intimidating involved
754            witnesses.

755    X.   SIXTH CAUSE OF ACTION

756   **1. VIOLATION OF THE FOURTEENTH AMENDMENT**

757      A. The Due Process and Equal Protection Clause of the Fourteenth
758         Amendment of the United States Constitution states that "[No] State
759         [shall] deprive any person of life, liberty, or property, without due
760         process of law; nor deny to any person within its jurisdiction the equal
761         protection of the laws."

762      B. The Defendants violated the Plaintiff's Fourteenth Amendment right to
763         Due Process through their failure of duty, false reporting, and
764         misconduct.

765      C. The Defendants violated the Plaintiff's Fourteenth Amendment right to
766         Equal Protection of the laws by not enforcing the laws violated during the
767         incident in questions.

768      D. The Defendants further violated the Plaintiff's Fourteenth Amendment
769         right to Equal Protection by falsely reporting information and adding
770         unsubstantiated information that could knowingly discredit the Plaintiff's
771         testimony.

772      E. The Defendants further violated the Plaintiff's Fourteenth Amendment
773         right to Equal Protection of the laws by failing to protect her. The
774         Plaintiff's belief that the Defendants are capable and/or willing to protect
775         her and the rest of the public has been shattered. The Plaintiff now knows
776         that Equal Protection of the laws, as defined by the Fourteenth
777         Amendment of the United States Constitution, will never exist as long as
778         the scale is tipped in favor of the institutions that enforce them.

779   XI. DAMAGES AND RELIEF REQUESTED

780   **1. COMPENSATORY DAMAGES:**

781      A. The Plaintiff is seeking $50,000 in emotional distress damages.

782   **2. PUNITIVE DAMAGE**

783      A. The plaintiff is seeking $50,000 in punitive damages.

784   **3. REMOVAL OF FALSIFIED INFORMATION ON SPD DATABASE**

785       A.  The Plaintiff is seeking to have the Defendant remove their note listing
786            her as having a "drug and alcohol disability" from their record(s) and
787            database.

788       B.  The note on the Plaintiff's record — created by the Defendant was
789            completely unnecessary and unsubstantiated given the Plaintiff was
790            never arrested, charged, or convicted with any drug or alcohol related
791            crime or incident.

792       C.  While the suspects that the Plaintiff alleges violently assaulted her were
793            acknowledged by the Defendants for violating several state and municipal
794            laws, the suspects were never cited for any. At least one of the suspects
795            also had a violent a drug-related criminal history.

796    XII.  EXHIBITS

797       1.  EXHIBIT A - 2017OPA-1080 CASE CLOSE SUMMARY
798       2.  EXHIBIT B - POLICE REPORT - 17-374035_REDACTED
799       3.  EXHIBIT C - SOHAIB 911 CALL - AUDIO_1779785
800       4.  EXHIBIT D - ISABELLE 911 CALL - AUDIO_1779786
801       5.  EXHIBIT E - SUSPECT VIDEO -AXON_BODY_2_VIDEO_2017-10-08_0054
802       6.  EXHIBIT F - SUSPECT TO OFFICER - 7715_4020171008010502
803       7.  EXHIBIT G - OFFICER TO ATTACKERS - CHARGING BIAS CRIME -
804           6793_4020171008011642
805       8.  EXHIBIT H - SCISSOR LIFT - IMG_2626
806       9.  EXHIBIT I- SCISSOR LIFT VIDEO TIME STAMP - IMG_2627
807     10. EXHIBIT J - VIDEO AMBULANCE SCENE - AXON_BODY_2_VIDEO_2017-10-
808          08_0128_REDASCTED
809     11. EXHIBIT K - VIDEO AMBULANCE -8395%4020171008005933_REDACTED
810     12. EXHIBIT   L   -   BYSTANDER   TESTIMONY   TO   OFFICER   -
811          8395%4020171008005934_REDACTED
812     13. EXHIBIT   M   -   AMBULANCE   SCENE   -   AXON_BODY_2_VIDEO_2017-10-
813          08_0128-2_REDACTED
814     14. EXHIBIT N - INCORRECT CASE NUMBER
815     15. EXHIBIT O - CALL FROM OFFICER TO PARAMEDICS - AUDIO_1779788

816     16. EXHIBIT P - ERIN TO SRGT - INDEPENDENT WITNESS
817        6269_4020171100814643

818     17. EXHIBIT Q - SUSPECT INJURY - SCREEN SHOT 2017-11-14 AT 11.50.58 PM

819     18. EXHIBIT R - 2017OPA-1080 AUDITOR CERTIFICATION MEMO AS UNTIMELY

820     19. EXHIBIT S - 2017OPA-1080 CIVILIAN (DND_) - SGT ANTHONY
821        BENNETT_REDACTED

822     20. EXHIBIT T - 2017OPA-1080 CIVILIAN (DND_) - SGT ANTHONY
823        BENNETT_REDACTED

824     21. EXHIBIT U - 2017OPA-1080 CIVILIAN (DND) - SGT ANTHONY
825        BENNETT_REDACTED

826     22.  EXHIBIT V - 2017OPA-1080 OPA CLASSIFICATION REPORT

827     23. EXHIBIT W - 2017OPA-1080 INVESTIGATION PLAN & CASE
828        SUMMARY_REDACTED

829     24. EXHIBIT X - FRANCISCO HAYWARD BACKGROUND PROFILE

830     25. EXHIBIT Y - 2017OPA-1080 INTAKE FOLLOW-UP_REDACTED

831     26. EXHIBIT Z - 2017OPA-1080 PAS ENTRY – RAGUSO

832     27. EXHIBIT Z0 - 2017OPA-1080 CASE COMPLETION MEMO

833     28. EXHIBIT Z1 - 2017OPA-1080, LEWIS SIGNED RECEIPT, WRITTEN
834        REPRIMAND

835     29. EXHIBIT Z2 - 2017OPA-1080 COMPLAINANT VM 06-11-18

836     30. EXHIBIT Z3 - 2017OPA-1080 AMR DOCUMENTS PROVIDED BY
837        COMPLAINANT

838     31. EXHIBIT Z4 - 2017OPA-1080 AUDIO_1790674 911 CALL #1

839     32. EXHIBIT Z5 - 2017OPA-1080 AUDIO_1790675 911 CALL #2

840     33.  EXHIBIT Z6 - 2017OPA-1080 AUDIO_1790676 911 CALL #3

841     34. EXHIBIT Z7 - 2017OPA-1080 AUDIO_1790677 911 CALL #4

842     35. EXHIBIT Z8 - 2017OPA-1080 COMPLAINANT VM (1-16-2018)

843     36. EXHIBIT Z9 - 2017OPA-1080 COMPLAINANT VM (2-23-2018)

844     37.  EXHIBIT Z10 - 2017OPA-1080 DCM FINAL

845     38. EXHIBIT Z11 - 2017OPA-1080 DISCIPLINE MEETING

846     39. EXHIBIT Z12 - 2017OPA-1080 INTERVIEW AVAILABILITY REQUEST - LEWIS
847         020218

848     40. EXHIBIT Z13 - 2017OPA-1080 INTERVIEW AVAILABILITY REQUEST -
849         RAGUSO 020218

850     41. EXHIBIT Z14 - 2017OPA-1080 MEDICAL RELEASE FORM OPA ISABELLE
851         KERNER

852     42. EXHIBIT Z15 - 2017OPA-1080 OPA CLASSIFICATION NOTIFICATION EMAIL

853     43. EXHIBIT Z16 - 2017OPA-1080 ORIGINAL COMPLAINT SUMMARY

854     44. EXHIBIT Z17 - 2017OPA-1080 SWORN EMPLOYEE IN-PERSON INTERVIEW
855         NOTIFICATION - RAGUSO 020618

856     45. EXHIBIT Z18 - 2017OPA-1080 SWORN WITNESS EMPLOYEE IN-PERSON
857         INTERVIEW NOTIFICATION - CLARK 020218

858     46. EXHIBIT Z29 - 2017OPA-1080 SWORN WITNESS EMPLOYEE IN-PERSON
859         INTERVIEW NOTIFICATION - PATTON 020618

860     47. EXHIBIT Z20 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW
861         NOTIFICATION - AGUIRRE 020618

862     48. EXHIBIT Z21 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW
863         NOTIFICATION - JORDAN 020618

864     49. EXHIBIT Z22 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW
865         NOTIFICATION - WARNOCK 020618

866     50. EXHIBIT Z23 - 2017OPA-1080 SWORN WITNESS IN-PERSON INTERVIEW
867         NOTIFICATION - WOOLLUM 020618

868     51. EXHIBIT Z24 - 2017OPA-1080 WITNESS EMPLOYEE - INTERVIEW
869         AVAILABILITY REQUEST - WOOLLUM 020218

870     52. EXHIBIT Z25 - 2017OPA-1080 WITNESS OFFICER - INTERVIEW
871         AVAILABILITY REQUEST - ABTS-OLSON 020218

872     53. EXHIBIT Z26 - 2017OPA-1080 WITNESS OFFICER - INTERVIEW
873         AVAILABILITY REQUEST - CLARK 020218

874     54. EXHIBIT Z27 - 2017OPA-1080 WITNESS OFFICER – INTERVIEW
875         AVAILABILITY REQUEST - WARNOCK 020218

876     55. EXHIBIT Z28 - 2017OPA-1080, LEWIS PROPOSED DAR PACKET

November 9TH, 2018

877    56. EXHIBIT Z29 - 2017OPA-1080, LEWIS WRITTEN REPRIMAND PACKET

878    57. EXHIBIT Z30 - 2017OPA-1080 COMPLAINANT VM 06-07-18

879    58. EXHIBIT Z31 - ISABELLE TO SRGT - EXPLAINING OFFICER CONDUCT -
880        ADMITTING TO INDEPENDENT WITNESS - 6269_4020171008014644

881    59. EXHIBIT Z32 - ARM INJURIES

882    60. EXHIBIT Z33 - HAIR/SCALP INJURIES

883    61. EXHIBIT Z34 - LEG CONTUSIONS

884    62. EXHIBIT Z35 – INJURY/MEDICAL RECORDS

885    Dated this 9th day of November 2018.

886

887                                    ISABELLE JEAN KERNER

888                                    *PRO SE*